# UNITED STATES DISTRICT COURT
## District of Kansas
### (Wichita Docket)

UNITED STATES OF AMERICA,

        **Plaintiff,**          **Filed Under Seal**

        **v.**          **CASE NO. 18-** 10065 **-01, 02, 03** - EFM

**TYLER R. BARRISS,**
**SHANE M. GASKILL, and**
**CASEY S. VINER,**

        **Defendants.**

# INDICTMENT

**THE GRAND JURY ALLEGES**:

## Introduction

1.    At all times relevant to this Indictment, defendant TYLER R. BARRIS was located in California.

2.    At all times relevant to this Indictment, defendant CASEY S. VINER was located in Ohio.

3.    At all times relevant to this Indictment, defendant SHANE M. GASKILL was located in Kansas.

4.     At all times relevant to this Indictment, the Wichita Police Department (WPD) and Sedgwick County Emergency Communications were located in Wichita, Kansas.

5.     For purposes of this Indictment, "swatting" occurs when someone makes a telephone call to an emergency service to falsely report an ongoing critical or emergency situation.  Such calls are placed with the intent to convey false or misleading information, under circumstances where the information is reasonably believed by the 911 dispatcher, emergency service providers or first responders. By way of example, such calls may involve allegations that a hostage crisis, shooting incident or arson has taken, is taking or will take place.  Such calls are placed with the intent to cause the deployment of special weapons and tactics ("SWAT") teams, bomb squads, and other police units, as well as causing evacuations of targeted schools, businesses and/or residences.  Such hoax or false calls are made in order to harass individuals, a business, a school, or a government office, and to disrupt the operations of targeted organizations and persons.

6.     Beginning on or about December 28, 2017, in the District of Kansas and elsewhere, defendants VINER and GASKILL played Call of Duty World War II – an on line game – together but from different physical locations. Defendant GASKILL played from Kansas, and defendant VINER from Ohio.

7.     Defendant VINER became upset by events that occurred during the game, events that he blamed on defendant GASKILL. The defendants argued via electronic communications, and defendant VINER remained upset.

2

8.      Defendant VINER then contacted defendant BARRISS through electronic communications and asked defendant BARRISS to "swat" defendant GASKILL at an address that defendant GASKILL previously had provided to defendant VINER, which was 1033 W. McCormick Street, Wichita, KS 67217. This address was not defendant GASKILL's true address.

9.      Defendant BARRISS followed defendant GASKILL on Twitter, researching and verifying that the address provided by defendant VINER was, in fact, the address for a residence.  Defendant BARRISS also identified a telephone number for the Wichita Police Department.

10.     Defendant GASKILL noticed that defendant BARRISS was following him on Twitter.  Defendant GASKILL then began communicating with defendant BARRISS through direct electronic messages, starting at approximately 5:51 p.m. (Central Standard Time) on December 28, 2017, as follows:

| | |
|---|---|
| **Defendant GASKILL:** | Please try some shit |
| **Defendant GASKILL:** | I'll be waiting |
| **Defendant GASKILL:** | 1033 w McCormick st Wichita Kansas 67217 |
| **Defendant GASKILL:** | I'll have you in prison for 5 years buddy Casey already gave me all the proof I need bahahahahah |
| **Defendant GASKILL:** | Hello pussy bitch say something |
| **Defendant BARRISS:** | Hey |
| **Defendant BARRISS:** | There was nothing for me to respond to |

**Defendant GASKILL:**     Hurry up fuck boy

**Defendant BARRISS:**     Just 1 question.  May I ask what makes me a fuck boy?

**Defendant GASKILL:**     You're gonna try and swat me its hilarious

**Defendant GASKILL:**     I'm waiting buddy

**Defendant BARRISS:**     What's your age?

**Defendant GASKILL:**     ███████████ [Information deleted for purposes of this Indictment.]

**Defendant GASKILL:**     ██████ is my ssn [Information deleted for purposes of this Indictment.]

**Defendant GASKILL:**     Try something please kid

**Defendant GASKILL:**     None of you gaymers scare me

**Defendant GASKILL:**     You have no idea who my family has connections with

**Defendant GASKILL:**     Hbaahahhahaha

**Defendant BARRISS:**     There's no way thats your SSN lol

**Defendant GASKILL:**     You want proof bud

**Defendant BARRISS:**     I'm not a gamer btw

**Defendant BARRISS:**     Yes I do

**Defendant GASKILL:**     Name is Shane Michael Gaskill

**Defendant GASKILL:**     Look me up niqqa

**Defendant GASKILL:**     I don't got shit to hide

**Defendant GASKILL:**     I'm out fuck boy

| | |
|---|---|
| **Defendant BARRISS:** | ? |
| **Defendant BARRISS:** | Where's the proof that that's your SSN lol and wym you're out? |
| **Defendant GASKILL:** | If you don't believe me idc kid |
| **Defendant GASKILL:** | I gave you everything you need to try something so hurry TF up |
| **Defendant GASKILL:** | goodbye. |

11.     At approximately 6:10 or 6:11 p.m., defendant BARRISS (who was located in California) began a series of calls to the Wichita Police Department (WPD)'s downtown security desk in Wichita, Kansas.  To disguise his identity, defendant BARRISS acquired an assigned telephone number from TextNow so it appeared to Wichita emergency personnel (with caller id) that defendant BARRISS was using a telephone with a "316" area code, the area code that includes Wichita, Kansas.

12.     Defendant BARRISS made telephone calls to the WPD, at 6:10 or 6:11 p.m., 6:15 or 6:16 p.m., and 6:17 p.m.  During one of these calls, defendant BARRISS identified himself as "Brian" to the WPD security officer who answered the phone.  According to the security officer, "Brian" asked if the number he called was the police department, then reported that his mother struck his father with a gun.  The security officer put defendant BARRISS on hold and attempted to transfer each call to the 9-1-1 system operated by Sedgwick County Emergency Communications (County).  The only successful transfer occurred with the 6:17 p.m. telephone call.

13.     At approximately 6:18 p.m., a County employee (dispatcher) received the call transferred from the WPD. The dispatcher asked the caller for the location of the emergency.  Defendant BARRISS stated that he was at 1033 W. McCormick where "I [he] just shot my dad in the head.  'Cause.  He was arguing with my mom and it was getting way out of control." The dispatcher asked defendant BARRISS to confirm the address, which defendant BARRISS did, as well as adding that it was a house and he was holding his mother and brother at gunpoint "in a closet right now" to ensure they not go anywhere. Defendant BARRISS identified himself as "Ryan" and he eventually stated "I didn't really mean to kill my dad."  The dispatcher asked defendant BARRISS if he could see his dad "right now."  Defendant BARRISS said yes, his dad was "on the floor dead" and "not breathing."  Soon thereafter, defendant BARRISS informed the dispatcher that he was considering lighting the house on fire before committing suicide. This call eventually disconnected, but the dispatcher was unable to call defendant BARRISS back because the dispatcher had not been able to obtain the number from caller ID (the number did not show up after the call was transferred by the WPD security officer).

14.     The County dispatched a response team of law enforcement officers to 1033 W. McCormick Street as a direct result of defendant BARRISS's telephone call. These officers initially believed they were responding to a self-inflicted shooting.  Shortly thereafter, dispatch notified the officers that this was not correct, the calling party reported that he shot his dad in the head and that dad was not breathing. When the officers arrived in the area, they established a perimeter around 1033 W. McCormick Street. At some point

thereafter, the front door opened and a man, later identified as A.F., stepped onto the front porch.  At approximately 6:28 p.m., a shot was fired that caused the death of A.F.

15.     At approximately 6:35 and 6:37 p.m. defendant BARRISS called the WPD security officer again.  During one of the calls, the WPD security officer asked defendant BARRISS for his name and phone number. Defendant BARRISS provided the name "Brian" and a telephone number that started with area code "316."  In the final call, the WPD security officer advised defendant BARRISS to hang up so the County dispatcher could call him.  The WPD security officer provided the "316" telephone number to the County dispatcher.

16.     At approximately 6:39 p.m. the County dispatcher called defendant BARRISS.  The following dialogue occurred –

| | |
|---|---|
| **Defendant BARRISS:** | Hello. |
| **County Dispatcher:** | This is 911 what's going on?  Hello. |
| **Defendant BARRISS:** | Yeah. |
| **County Dispatcher:** | This is 911 what's going on. |
| **Defendant BARRISS:** | Um, I recently got disconnected, I had told you guys everything that happened about the argument with my mom and dad. |
| **County Dispatcher:** | Ok. What's your address? Hello. |
| **Defendant BARRISS:** | Yeah.  1033 West McCormick Street. |
| **County Dispatcher:** | Ok.  Tell me exactly what happened. |

7

**Defendant BARRISS:**    They were arguing and I shot him in the head and he's not breathing anymore.

**County Dispatcher:**    Okay, so what's going on right now? Brian are you there?

**Defendant BARRISS:**    Yeah.

**County Dispatcher:**    Okay, do you have any weapons on you?

**Defendant BARRISS:**    Yeah, I do.

**County Dispatcher:**    What kind of weapons do you have?

**Defendant BARRISS:**    Um, a handgun.

**County Dispatcher:**    What kind of handgun is it?

**Defendant BARRISS:**    I don't know it's my dad's.

**County Dispatcher:**    What color is it?

**Defendant BARRISS:**    It's black.

**County Dispatcher:**    Where exactly are you at in the house?

**Defendant BARRISS:**    Um, by the closet.

**County Dispatcher:**    Okay, what closet?

**Defendant BARRISS:**    My mom's.

**County Dispatcher:**    Where's that at in the house?

**Defendant BARRISS:**    Uh, in her room.  Which is where she's at and my little brother.

**County Dispatcher:**    You have a little brother?

**Defendant BARRISS:**    Yeah

| | |
|---|---|
| **County Dispatcher:** | What's your brother's name? |
| **Defendant BARRISS:** | Alex.  I was on the phone with you guys earlier um, telling you guys about it I just, I got disconnected. |
| **County Dispatcher:** | Okay. We're gonna try to get you some help um, where exactly in the house like is this a one story or two story house? |
| **Defendant BARRISS:** | It's one story. |
| **County Dispatcher:** | Okay, is it towards the front of the house, the back of the house? Is it towards the front of the house, the back of the house? |
| **Defendant BARRISS:** | Um, well like it's, it's like towards the back I guess. I'm just pointing the gun at them making sure they stay in the closet.  My mom and my little brother. |
| **County Dispatcher:** | Okay, is there any way you can put the gun up? |
| **Defendant BARRISS:** | No, are you guys sending someone over here cause then I'm definitely not gonna put it away. |
| **County Dispatcher:** | Okay, I'm just gonna go ahead and stay on the phone with you okay? |
| **Defendant BARRISS:** | That's fine.  Until they get here or? |
| **County Dispatcher:** | As long as you need me to okay? |
| **Defendant BARRISS:** | Yeah, I'm thinking about, um, cause I already poured gasoline all over the house I might just set it on fire. |
| **County Dispatcher:** | Okay, well we don't need to do that okay? |
| **Defendant BARRISS:** | In a little bit I might. |

| | |
|---|---|
| **County Dispatcher:** | Why would you do that? |
| **Defendant BARRISS:** | Do you have my address correct? |
| **County Dispatcher:** | Can you verify it for me again? |
| **Defendant BARRISS:** | Um, it's 1033 West McCormick street, um, my zip code is 67213. |
| **County Dispatcher:** | Okay. So which way does your house face like does your front door face north, south, east, west? |
| **Defendant BARRISS:** | Uh, no, it's just facing the street.  My dad isn't breathing it's kind of giving me anxiety making me like paranoid. Hello. |

...

Shortly thereafter, the call disconnected.

17.     At approximately 7:50 p.m., defendants BARRISS and GASKILL had the

following exchange through electronic communications:

| | |
|---|---|
| **Defendant GASKILL**: | Hi skid |
| **Defendant BARRISS**: | [clown emoji] |
| **Defendant GASKILL**: | So let's try again |
| **Defendant GASKILL**: | You have my address do what you please with it |
| **Defendant GASKILL**: | And btw tell dumb ass Casey nobody got swatted this shit has me dying |
| **Defendant GASKILL**: | LMFAO kid is so delusional |
| **Defendant BARRISS**: | Lol |
| **Defendant BARRISS**: | ight whatever unswattable god |

**Defendant BARRISS**:     You win gg

**Defendant BARRISS**:     I failed

**Defendant GASKILL**:     I've got swatted before

**Defendant GASKILL**:     And anytime something happens I get a phone call to make sure everything is ok 1st

**Defendant GASKILL**:     If not then they show up

**Defendant BARRISS**:     I know the police went

**Defendant BARRISS**:     That's all

**Defendant GASKILL**:     Look him up his name is Greg he's a Wichita police lieutenant

**Defendant BARRISS**:     Cool lemme just look up Greg

**Defendant GASKILL**:     K

**Defendant GASKILL**:     What you guys don't understand is you never swatted me bahahahah

**Defendant GASKILL**:     This is comedy

**Defendant BARRISS**:     Okay well shes gonna get swatted cause of you s

**Defendant BARRISS**:     So

**Defendant GASKILL**:     Did you look him up

**Defendant BARRISS**:     Yo answer me this

**Defendant BARRISS**:     Did police show up to your house yes or no

**Defendant GASKILL**:     No dumb fuck

**Defendant BARRISS**:     Lmao here's how I know you're lying

18.     Defendant BARRISS then posted a screenshot, at 7:58 p.m., of the following

direct message conversation between defendants GASKILL and VINER:

| | |
|---|---|
| **Defendant VINER:** | Oi |
| **Defendant GASKILL**: | Hi |
| **Defendant VINER:** | Did anyone show @ your house? |
| **Defendant VINER:** | Be honest |
| **Defendant GASKILL**: | Nope |
| **Defendant GASKILL**: | The cops are at my house because someone ik just killed his dad |

19.     Defendants BARRISS and GASKILL then continued their conversation, via

Twitter direct messages, as follows:

| | |
|---|---|
| **Defendant GASKILL**: | They showed up to my old house retard |
| **Defendant BARRISS**: | That was the call script |
| **Defendant BARRISS**: | Lol |
| **Defendant GASKILL**: | Your literally retarded |
| **Defendant GASKILL**: | Ik dumb ass |
| **Defendant BARRISS**: | So you just got caught in a lie |
| **Defendant GASKILL**: | No I played along with you |
| **Defendant GASKILL**: | They showed up to my old house that we own and rented out |
| **Defendant GASKILL**: | We don't live there anymore bahahaha |

**Defendant BARRISS**:     Then you're not as big and as bad as you thought?

….

**Defendant BARRISS**:     Cause you were acting tough

**Defendant GASKILL**:     Bahaah

**Defendant GASKILL**:     2ez buddy

**Defendant BARRISS**:     But gave an old address

**Defendant BARRISS**:     Its okay you got swatted man dont worry

**Defendant GASKILL**:     So do you wanna try again?

**Defendant GASKILL**:     LMFAO

**Defendant BARRISS**:     So did @Impetrating

**Defendant GASKILL**:     I didn't get swatted Imfiaiahshhdhs

**Defendant GASKILL**:     You have my name

**Defendant GASKILL**:     Look it up for yourself

**Defendant GASKILL**:     ik you just wasted your time and now your pissed

**Defendant BARRISS**:     Not really

**Defendant BARRISS**:     Once you said "killed his dad" I knew it worked lol

**Defendant BARRISS**:     That was the call lol

**Defendant GASKILL**:     Yes it did buy they never showed up to my house

**Defendant GASKILL**:     You guys got trolled

**Defendant GASKILL**:     Look up who live there we moved out almost a year ago

13

**Defendant GASKILL**:  I give you props though you're the 1% that can actually swat babahaha

**Defendant BARRISS**:  Dude MY point is
You gave an address that you dont live at but you were acting tough lol

**Defendant BARRISS**:  So you're a bitch

….

**Defendant BARRISS:**  And if you really wanted me in jail why give a fake address?????

**Defendant BARRISS:**  (Three crying/laughing emojis)

**Defendant GASKILL:**  He has my main address he pulled my IP

**Defendant GASKILL:**  He's the 1 who fell for the trick

**Defendant BARRISS:**  Man I'm so confused rn

**Defendant GASKILL:**  OK.

**Defendant GASKILL:**  He pulled my ip and said he could vet me swatted

**Defendant GASKILL:**  So I gave him my old address to see what would happen and the house got swatted

**Defendant BARRISS:**  Hmm

**Defendant GASKILL:**  If anything happens at that house we get a phone call since my uncle works on that side of Wichita

**Defendant GASKILL:**  And indeed the house for swatted that's why I'm laughing so hard

**Defendant GASKILL:**  He has my address and could've gave it to you buy he's retarded

14

| | |
|---|---|
| **Defendant BARRISS:** | You think he has your address just because he has your IP? |
| **Defendant BARRISS:** | "And indeed the house for swatted that's why I'm laughing so hard"<br>what? Wym "for swatted" |
| **Defendant GASKILL:** | I've told him before and he can get it from my ip |
| **Defendant GASKILL:** | The cops showed up at the house but I got a phone call before it happened that's why I'm laughing |
| **Defendant BARRISS:** | Hmmmmm |
| **Defendant BARRISS:** | If you actually received a call before they went I'm surprised |
| **Defendant GASKILL:** | I did how do you think I they showed up he was at the house while on the phone with my dad |
| **Defendant BARRISS:** | Lolmfao |
| **Defendant GASKILL:** | Anyways good job but you failed the mission because I trolled the fuck out of you guys |
| **Defendant BARRISS:** | Lowkey |
| **Defendant GASKILL:** | have a good day :) |
| **Defendant BARRISS:** | u2 |
| **Defendant GASKILL:** | You might wanna delete your tweets lol |
| **Defendant BARRISS:** | I don't |
| **Defendant BARRISS:** | Want to |
| **Defendant GASKILL:** | That's fine doesn't matter to me |

15

20.     At 9:51 p.m., after the shooting had been reported by media, defendant GASKILL initiated the following Twitter direct message conversation with defendant BARRISS:

| | |
|---|---|
| **Defendant GASKILL:** | Dm asap |
| **Defendant GASKILL:** | Please it's very fucking impi |
| **Defendant GASKILL:** | Hello |
| **Defendant BARRISS:** | ? |
| **Defendant BARRISS:** | What you want |
| **Defendant GASKILL:** | Dude |
| **Defendant GASKILL:** | Me you and bape |
| **Defendant GASKILL:** | Need to delete everything |
| **Defendant GASKILL:** | This is a murder case now |
| **Defendant GASKILL:** | Casey deleted everything |
| **Defendant GASKILL:** | You need 2 as well |
| **Defendant GASKILL:** | This isn't a joke K troll anymore |
| **Defendant GASKILL:** | If you don't you're literally retarded I'm trying to help you both out |
| **Defendant GASKILL:** | They know it was swat call |

21.     On December 29, 2017, defendant VINER sent a screenshot of an internet search for "wichita [sic] kansas [sic] shooting" to another person (identified as J.D. for purposes of this Indictment).  Defendant VINER asked J.D. if "[i]t's on those websites

16

does that mean it's real. [sic]"  J.D. responded that "[i]t's a real incident. Doesn't say if

related to game stuff."  Defendant VINER then sent J.D. a screenshot of a Facebook page

with a link to a news video recording about these events and a post which read --

> "Some guy i [sic] know on Call of Duty named baperize got Swautisitic
> [sic] to swat this guys [sic] house because he lost a call of duty
> tournament on gamebattles and got him killed.  WTF is wrong with
> people"

Then, the following text communications occurred:

| | |
|---|---|
| **Defendant VINER:** | It says at the top it was due to apparently losing a tournament and doing it when I won the tournament |
| **Defendant VINER:** | First off and it had nothing to do with it |
| **J.D.:** | That's someone's opinion. Not what the article says. Relax |
| **Defendant VINER:** | It doesn't matter, the investigation will literally unveil everything, the guy who was "swatted" has Twitter screenshots of every conversation |
| **J.D.:** | Ok |
| **J.D.:** | Hopefully you didn't say anything stupid |
| **Defendant VINER:** | I did, I literally said you're gonna be swatted. Not thinking at all, so I'm going to prison. |
| **Defendant VINER:** | And then after that he messaged the guy who actually did it and said nothing happened that he swatted hi [sic] old house and that he got a phone call first |
| **J.D.:** | Relax |

**J.D.:**                    If that is all you said, I wouldn't worry to much about it

**Defendant VINER:**         I literally said you're gonna be swatted, and the guy who swatted him can easily say I convinced him or something when I said hey can you swat this guy and then gave him the address and he said yes and then said he'd do it for free because I said he doesn't think anything will happen

**Defendant VINER:**         How can I not worry when I googled what happens when you're involved and it said a eu [sic] kid and a US person got 20 years in prison min

**Defendant VINER:**         And he didn't even give his address he gave a false address apparently

**J.D.:**                    You didn't call the hoax in…

**Defendant VINER:**         Does t [sic] even matter ?????? I was involved I asked him to do it in the first place

**Defendant VINER:**         I gave him the address to do it, but then again so did the other guy he gave him the address to do it as well and said do it pull up etc

**J.D.:**                    Guess we'll find out.  I actually thought that having swat called on us would have been a clue…… Did you think I was kidding when I said I talked to Cincinnati swat guys?

**Defendant VINER:**         Idk, nothing happened so I don't know.  the swautistic guy is a known swatted [sic] he swatted a major gaming event and nothing's happened to him, he's literally off the radar or whatever where the guy who was supposed to be swatted posted that fake dox that I told you about before and if that's the Case it won't be long till they figure out our address from it and come

22.     During a forensic examination of defendant VINER's iPhone, the text communications described in the previous paragraph were found and it was determined that defendant VINER's iPhone was factory reset at some point.

23.     Defendant VINER sent outgoing iMessages to unknown persons on December 29, 2017, that were deleted.  These iMessages include the following:

**Defendant VINER:**     I was involved in someone's death

**Defendant VINER:**     Idk… I got pissed off at him he got pissed at me.. he gave me his address and said pull up and I said I won't be the one pulling up you're getting swatted… I then gave the guy his address and then the guy followed miruhcle on twitter and as soon as he followed on Twitter miruhcle send him the address and says pull up to him or do something

24.     No one named "Ryan" or "Brian" lived at 1033 W. McCormick on December 28, 2017.  No one had been shot inside the house, no hostages were being held, and there was no gasoline poured all over the house, nor was anyone inside threatening suicide. Defendant BARRISS made false allegations to the WPD and the Sedgwick County Emergency Communications in phone calls that occurred between the hours of 6:10 p.m. and 6:39 p.m.

25.     To make these false telephone calls to the WPD and the County on December 28, 2017, defendant BARRISS utilized interstate electronic communication services.

26.     To communicate with each other on December 28, 2017, all three defendants utilized interstate electronic communication services.

19

**THE GRAND JURY CHARGES:**

## Count One

### 18 U.S.C. § 1038
### (False Information and Hoaxes)

That beginning on and about December 28, 2017, in the District of Kansas, and elsewhere, the defendant,

### TYLER R. BARRISS,

intentionally conveyed false and misleading information under circumstances where such information may reasonably have been believed, that indicated that an activity had taken, was taking and would take place that would constitute a violation of chapter 44 of Title 18, United States Code (namely, Title 18, United States Code, Section 844(e)), and another person's death resulted, that is, defendant BARRISS placed hoax telephone calls to emergency services in Wichita, Kansas, falsely claiming that he shot another person, held hostages at gunpoint, was armed with a firearm and might set the house at 1033 W. McCormick Street on fire, with those false calls resulting in the fatal shooting of a resident of that address.

All in violation of Title 18, United States Code, Sections 1038(a)(1)(C) and 2.

## Count Two

### 18 U.S.C. § 2261A
### (Cyberstalking)

That beginning on and about December 28, 2017, in the District of Kansas, and elsewhere, the defendant,

**TYLER R. BARRISS,**

with the intent to harass and intimidate another, did intentionally use an electronic communication service of interstate commerce to engage in a course of conduct that caused and would be reasonably expected to cause substantial emotional distress to another and resulted in the death of another, that is, defendant BARRISS placed telephone calls which communicated that he shot another person, held hostages at gunpoint, and might set the house at 1033 W. McCormick Street on fire which resulted in the fatal shooting of a resident at that address.

All in violation of Title 18, United States Code, Sections 2261A and 2.

## Count Three

### 18 U.S.C. § 844(e)
### (Threatening to Kill Another or Damage Property by Fire)

That beginning on and about December 28, 2017, in the District of Kansas, and elsewhere, the defendant,

**TYLER R. BARRISS,**

through the use of the telephone and other instruments of interstate commerce, in and affecting interstate commerce, willfully made a threat, and maliciously conveyed false information knowing the information to be false, concerning an alleged attempt to injure and intimidate another and unlawfully damage real property by fire, that is, defendant BARRISS placed hoax telephone calls from California to the Wichita Police Department and Sedgwick County Emergency Communications in Wichita, Kansas, falsely claiming

that he shot another person, held hostages at gunpoint and might set the house at 1033 W. McCormick on fire.

All in violation of Title 18, United States Code, Sections 844(e) and 2.

## Count Four

### 18 U.S.C. § 875(c)
### (Interstate Threats)

That beginning on and about December 28, 2017, in the District of Kansas, and elsewhere, the defendant,

**TYLER R. BARRISS,**

knowingly and willfully transmitted in interstate commerce a communication containing a threat to injure the person of another, that is, defendant BARRISS "swatted" defendant GASKILL, by placing hoax telephone calls from California to the Wichita Police Department and Sedgwick County Emergency Communications in Wichita, Kansas.

All in violation of Title 18, United States Code, Sections 875(c) and 2.

## Counts Five through Eleven

### 18 U.S.C. § 1343
### (Wire Fraud)

That beginning on and about December 28, 2017, in the District of Kansas, and elsewhere, the defendants,

**TYLER R. BARRISS, and**
**CASEY S. VINER,**

having devised and intending to devise a scheme and artifice to defraud, and in order to execute the scheme and artifice, did knowingly and willfully transmit and cause to be transmitted by means of wire communications in interstate commerce sounds and signals as described below for each count, that is, the defendants transmitted and caused to be transmitted false and fraudulent information to the Wichita Police Department and to Sedgwick County Emergency Services that an emergency situation existed at 1033 W. McCormick Street, and such communications caused law enforcement resources and the services of law enforcement officers to be sent to and used at that location when the defendants knew that emergency services were not required or needed:

| Count | Time | Caller | Recipient |
|-------|------|--------|-----------|
| 5 | 6:10 - 6:11 p.m. | Defendant BARRISS | WPD Security Officer |
| 6 | 6:15 – 6:16 p.m. | Defendant BARRISS | WPD Security Officer |
| 7 | 6:17 p.m. | Defendant BARRISS | WPD Security Officer |
| 8 | 6:18 p.m. | WPD Security Officer (transfer for defendant BARRISS) | Sedgwick County Emergency Communications |
| 9 | 6:35 p.m. | Defendant BARRISS | WPD Security Officer |
| 10 | 6:36 - 6:37 p.m. | Defendant BARRISS | WPD Security Officer |
| 11 | 6:39 p.m. | Sedgwick County Emergency Communications | Defendant BARRISS |

All in violation of Title 18, United States Code, Sections 1343 and 2.

## **Count Twelve**

**18 U.S.C. § 371**
**(Conspiracy)**

That beginning on and about December 28, 2017, in the District of Kansas, and elsewhere, the defendants,

**TYLER R. BARRISS, and**
**CASEY S. VINER,**

did knowingly and voluntarily conspire with each other (A) to convey false and misleading information in violation of the provisions of Title 18, United States Code, Section 1038, (B) to knowingly and willfully transmit in interstate commerce a communication in violation of the provisions of Title 18, United States Code, Section 875(c), (C) to use electronic facilities of interstate commerce in violation of the provisions of Title 18, United States Code, Section 2261A, and (D) to use wire communications to devise a scheme and artifice to defraud, and to execute such scheme and artifice in violation of Title 18, United States Code, Section 1343, all of which are crimes against the United States, and said defendants did at least one act to effect the object of the conspiracy.

In furtherance of the conspiracy and to achieve the objects thereof, the defendants committed and caused to be committed at least one overt act, that is,

1.      Defendant VINER requested that defendant BARRISS swat defendant GASKILL;

2.      Defendant BARRISS agreed to swat defendant GASKILL;

3.      Defendant VINER provided an address for defendant GASKILL (1033 W. McCormick Street, Wichita, Kansas) and defendant GASKILL's user name to defendant BARRISS;

4.      Defendant BARRISS researched a telephone number for the Wichita Police Department, located in Wichita, Kansas;

5.      Defendant BARRISS researched the McCormick Street address;

6.      Defendant BARRISS disguised his telephone number to make it falsely appear he was calling from a number starting with a 316 area code;

7.      Defendant BARRISS placed at least one telephone call to the Wichita Police Department, located in Wichita, Kansas;

8.      Defendant BARRISS conveyed false information about himself and events to an employee of the Wichita Police Department at least once;

9.      Defendant BARRISS participated in at least one telephone call with Sedgwick County Emergency Communications, located in Wichita, Kansas;

10.     Defendant BARRISS conveyed false information about himself and events occurring at the McCormick Street address to an employee of Sedgwick County Emergency Communications at least once.

All in violation of Title 18, United States Code, Section 371.

## Count Thirteen

**18 U.S.C. § 1512(c)(1)**
**(Obstruction of Justice)**

That beginning on and about December 28, 2017, in the District of Kansas and elsewhere, the defendant,

**CASEY S. VINER, and**
**SHANE M. GASKILL,**

did corruptly alter and destroy a record and object, and attempt to do so, with the intent to impair its integrity and availability for use in an official proceeding, in that, defendant VINER deleted electronic communications with defendants BARRISS and GASKILL when defendant VINER became aware that a person had been fatally shot as a result of the swatting and that law enforcement was investigating the hoax telephone calls initiated and completed by defendants VINER and BARRISS, and defendant VINER was aided, abetted, counseled and induced to do so by defendant GASKILL.

All in violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## Count Fourteen

**18 U.S.C. § 1512(c)(1)**
**(Obstruction of Justice)**

That beginning on and about December 28, 2017, in the District of Kansas, the defendant,

**SHANE M. GASKILL,**

did corruptly alter and destroy a record and object, and attempt to do so, with the intent to impair its integrity and availability for use in an official proceeding, in that, defendant GASKILL deleted electronic communications with defendants BARRISS and VINER, when defendant GASKILL became aware that law enforcement was investigating the hoax telephone calls initiated and completed by defendants VINER and BARRISS.

All in violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## Count Fifteen

### 18 U.S.C. § 1512(c)(1)
### (Obstruction of Justice)

That beginning on and about December 28, 2017, in the District of Kansas, the defendant,

**SHANE M. GASKILL,**

did corruptly attempt to alter and destroy a record and object with the intent to impair its integrity and availability for use in an official proceeding, in that, defendant GASKILL urged defendant BARRISS to delete electronic communications with defendants GASKILL and VINER when defendant GASKILL became aware that law enforcement was investigating the hoax telephone calls initiated and completed by defendants VINER and BARRISS.

All in violation of Title 18, United States Code, Sections 1512(c)(1) and 2.

## Count Sixteen

**18 U.S.C. § 1512(k)**
**(Conspiracy to Obstruct Justice)**

That beginning on and about December 28, 2017, in the District of Kansas and elsewhere, the defendants,

**SHANE M. GASKILL, and**
**CASEY S. VINER,**

did knowingly combine, conspire and agree together and with others known to the Grand Jury, to commit an offense against the United States, to-wit: to corruptly destroy and conceal a document and other object, and attempt to do so, with the intent to impair the object's availability for use in an official proceedings, that is, to delete and conceal direct messages between defendants GASKILL, VINER and BARRISS  when the defendants became aware that a person had been fatally shot as a result of the swatting and that law enforcement was investigating the hoax telephone calls initiated and completed by defendants VINER and BARRISS.

All in violation of Title 18, United States Code, Section 1512(k).

## Count Seventeen

**18 U.S.C. § 1343**
**(Wire Fraud)**

That beginning on and about December 28, 2017, in the District of Kansas, and elsewhere, the defendant,

**SHANE M. GASKILL,**

having devised and intending to devise a scheme and artifice to defraud, and in order to execute the scheme and artifice, did knowingly and willfully transmit and cause to be transmitted by means of wire communications in interstate commerce sounds and signals, that is, defendant GASKILL falsely told defendant BARRISS that defendant GASKILL currently lived at 1033 W. McCormick Street in Wichita, Kansas, when defendant GASKILL knew that information was false, defendant GASKILL knew that defendant BARRISS intended to swat defendant GASKILL at the McCormick Street address, defendant GASKILL explicitly taunted and dared defendant BARRISS to conduct the swat, and defendant GASKILL knew that if the swat was successful emergency services would be sent to the McCormick address unnecessarily.

All in violation of Title 18, United States Code, Section 1343.

**A TRUE BILL**

May 22, 2018 _____     s/Foreperson _____

DATE                                 FOREPERSON OF THE GRAND JURY

 s/Stephen R. McAllister _____

STEPHEN R. McALLISTER

United States Attorney

District of Kansas

1200 Epic Center, 301 N. Main

Wichita, Kansas 67202

(316) 269-6481

Ks. S. Ct. No. 15845

stephen.mcallister@usdoj.gov

---

**It is requested that the trial be held in Wichita, KS**