# UNITED STATES DISTRICT COURT
## District of Kansas

**UNITED STATES OF AMERICA,**

   **Plaintiff,**

  v.         CASE NO. 18-10065-01-EFM

**TYLER R. BARRISS,**

   **Defendant.**

### UNITED STATES' SENTENCING MEMORANDUM

Comes now, the United States of America, by and through its Stephen R. McAllister, United States Attorney, for the District of Kansas, and advises the court as follows:

The parties in this case are presenting the Court with a Rule 11(c)(1)(C) plea agreement in which the defendant has agreed to accept a sentence of imprisonment of 20 – 25 years, with both parties to make arguments to the Court in favor of a sentence within that range. Counsel for defendant Tyler R. Barriss filed a sentencing memorandum on February 22, 2019, making a number of arguments to support a sentence of 20 years imprisonment. This sentencing memorandum for the Government responds to the defendant's

arguments and makes arguments in support of the Government's request for a 25-year sentence.

In particular, the Government will briefly address the following points:

1. The defendant has demonstrated mixed feelings and actions when it comes to remorse and acceptance of responsibility, some inconsistent with true remorse.

2. Although the defendant's plea of guilty to dozens of offenses has saved the Government time and resources in terms of trials, the defendant himself benefits greatly from his plea by not risking consecutive sentences imposed by numerous jurisdictions, and his dozens of offenses caused the Government to expend extraordinary amounts of investigative and law enforcement resources to bring this case.

3. Defendant himself acknowledges that this case warrants a sentence above the advisory guidelines range. In fact, the statutory maximum penalty for two counts of conviction in the District of Kansas case is life imprisonment (for actions resulting in the death of Mr. Finch), a sentence significantly less than the 25 years the Government seeks.

4. Defendant himself was not a gamer but the go-to "swatter" for members of the gaming community. For him, his actions were not about gaming, but about notoriety and fame within that community.

5. All evidence suggests that defendant has never been subjected to any sort of abuse—physical, emotional, sexual or otherwise—nor does he have any significant history of substance abuse, by his own admission. Instead, evidence demonstrates that defendant is intelligent and clever.

### I. Defendant has failed to demonstrate consistent, extraordinary acceptance of responsibility and sincere remorse.

In sharp contrast to the evidence to which defendant points in his sentencing memorandum on these points, the Government directs the Court's

attention to the following evidence, all of which contradicts and undermines defendant's claim:

1. *The Keem Interview*. After the crimes at issue here, but before defendant was arrested, defendant was interviewed by a man named Brian Keem about the Kansas crimes, an interview that is posted on YouTube and a copy of which the Government supplies the Court as Attachment A, along with this memorandum. In that short interview, a portion of which is excerpted at paragraph 123 of the PSIR (pages 37-38), the defendant downplayed his role and denied responsibility for anyone's death (e.g., "I didn't cause someone to die."). This interview is well worth a few minutes of time to listen to and review.

2. *The Sedgwick County Jail Incident*. Following defendant's arrest and incarceration in the Sedgwick County Jail, he was able to access the internet on April 6, 2018, and tweeted the following: "How am I on the Internet if I'm in jail? Oh, because I'm an eGod that's how" and "All right, now who was talking shit? …. Your ass is about to get swatted." PSIR, at ¶120, page 36.

3. *Defendant's letters of apology*. As part of the plea agreement now presented to the Court, the Government agreed that if defendant were to write letters of apology to the Finch family, to the Wichita Police Department, and to Sedgwick County Emergency Services, the Government would consider such letters and if the U.S. Attorney deemed them truly sincere and remorseful, the

Government would recommend a sentence of less than 25 years. Defendant did write three very short and underwhelming letters. See PSIR ¶122 (pages 36-37). Defendant now tries to excuse the brevity and lack of depth to the letters on the basis of his education, but defendant clearly knows how to read and write (just in connection with this case he communicated all the time in writing via Twitter and other media), and there is substantial evidence of his intelligence and cleverness. See PSIR ¶¶491-497.

## II. Defendant's plea benefits him as much or more than it benefits the Government.

Although true that defendant's plea avoids the necessity of a trial or a series of trials, defendant fails to acknowledge or recognize that his extraordinary crime spree has cost the Government substantial investigative and law enforcement resources. Moreover, defendant benefits greatly from this plea by avoiding possible prosecution in several dozen jurisdictions and the accompanying risk of multiple, consecutive sentences.

## III. A 25-year sentence is fair and appropriate.

Defendant, acknowledges, as he must, that this case "presents the Court with the discretion to decide not whether it will depart upward but by how much." Barriss sentencing mem.at 9. Even that statement fails to acknowledge that the guidelines are advisory, and two statutes under which defendant is

pleading guilty—18 U.S.C. §1038(a)(1)(C) and 18 U.S.C. §2261A—provide for a sentence of up to *life in prison* when the offense results in the death of another, as in this case.

Defendant here did not just "swat"; his actions directly resulted in the death of an innocent person, Mr. Andrew Finch. That fact alone justifies a 25-year sentence. But that is not the only fact justifying a 25-year sentence.

1. The scope, nature, and deviousness of defendant's criminal activity is staggering. He committed offenses in dozens of jurisdictions, and potentially risked innocent human life each and every time he engaged in "swatting." Only good fortune precluded a tragedy like the death of Mr. Finch from occurring much sooner and in other locations.

2. Some of defendant's swatting incidents were a form of domestic terrorism, as he targeted governmental entities—including the FBI and the FCC—with bomb threats.

3. Defendant had been imprisoned in California for bomb hoax activity, but that experience obviously had no effect on him as he committed the crimes to which he is pleading in this case *after* his conviction and imprisonment in California. See PSIR ¶444 (page 60).

4. Defendant obstructed investigation into his criminal activities, as detailed in the PSIR, including deleting and attempting to destroy numerous communications related to these events. See PSIR ¶¶100-101, 115, 116.

5. Finally, defendant's intelligence, cleverness, and facility with electronic and digital technology counsel in favor of a longer sentence. Defendant is not an ignorant person of limited mental capacity. All of the evidence instead supports his boasts and apparent attitude that he is smarter than most, and quite capable. See PSIR ¶¶496-497. Instead of choosing to put his intelligence and skills to productive use, he repeatedly engaged in dangerous, criminal behavior, including after being convicted once and serving time in jail for the very same sort of conduct.

## IV. Defendant deserves no leniency on the alleged "psychological" grounds he now puts forward.

Defendant's claim that his criminal behavior should somehow be attributed to his identification and association with the gaming community relies on speculation and assumptions, not evidence.

1. Although defendant asserts that he "was part of the gaming community," Barriss sentencing mem. at 12, and that, growing up, "he spent almost all of his time indoors playing video games," id. at 13, he cites nothing in the PSIR to support those assertions. There simply is not evidence before

the Court that defendant spent all his time gaming, or was an avid gamer. What is uncontroverted is that he developed a reputation among gamers as a person who would "swat" gamers and other targets upon request, with or without any sort of remuneration. There is no evidence that gamers engaged defendant to game and/or compete with them; rather, they went to him to settle scores they had with each other.

2. Importantly, there is no evidence in the PSIR, nor does the defendant claim any evidence exists, that defendant was ever abused as a child in any fashion—not physically, not emotionally, not sexually. See PSIR ¶¶462, 466. Nor is there evidence—and defendant's own admissions are to the contrary—that defendant has had any significant history of substance abuse, whether alcohol or drugs. See PSIR ¶¶484-490. There is no support for any assertion that defendant was traumatized in ways that might, in some sense, mitigate the seriousness of his conduct. To be sure, defendant did not grow up with a father or mother present in his life. But he did grow up with a grandmother who tried her best, and he suffered no abuse at her hands or the hands of anyone else.

3. Even if one were to assume that defendant was part of the "gaming community" and his perceptions and attitudes were influenced by whatever the mores of that group may be (matters not in evidence), it would not be a

7

mitigating consideration. Success in life generally is not accomplished by holing up in a basement and living in a fantasy world with no actual contact with other human beings. Instead, success comes with getting an education, pursuing and obtaining employment, reading books, and spending time in conversation with family, friends, and peers. In other words, the Court should not consider participation in "gaming" as a mitigating circumstance. Rather, excessive gaming should be an aggravating factor, a failure to engage and interact with the real world in which we all live.

## Conclusion

Assuming the Court accepts the 11(c)(1)(C) plea agreement in this case, and for the reasons set forth in this memorandum, the Government asks the Court to sentence defendant to 25 years imprisonment.

> Respectfully submitted,
>
> s/ Stephen R. McAllister
> STEPHEN R. McALLISTER, #15845
> United States Attorney
> District of Kansas
> 301 N. Main, Suite 1200
> Wichita, Kansas 67202
> Telephone: (316) 269-6481
> Fax: (316) 269-6484
> Email: stephen.mcallister@usdoj.gov

## CERTIFICATE OF SERVICE

I hereby certify that on this 27th day of February 2019, I electronically filed the foregoing sentencing memorandum with the Clerk of the Court by using the CM/ECF system which will provide notice to counsel of record.

s/ Stephen R. McAllister
STEPHEN R. McALLISTER
United States Attorney